UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 21-00252 |

# COMPLAINT

The Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members, Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc., (collectively, "Plaintiffs") through their attorneys, allege and state as follows:

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), as this action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i).

2. Plaintiffs contest certain factual findings and legal conclusions in the United States Department of Commerce's ("Commerce" or "the Department") less than fair value investigation of Common Alloy Aluminum Sheet from Turkey (Case No. A-489-839). The Department's final determination was published as Common Alloy Aluminum Sheet From Turkey: Final Affirmative Determination of Sales at Less Than Fair Value, 86 Fed. Reg. 13,326

(Dep't Commerce Mar. 8, 2021) (hereinafter, "<u>Final Determination</u>") and the accompanying <u>Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Common Alloy Aluminum Sheet from Turkey, and Final Negative Determination of Critical Circumstances</u> (Dep't Commerce Mar. 1, 2021) (hereinafter, "<u>Issues and Decision Memorandum</u>"). Following the U.S. International Trade Commission's issuance of its final unanimous affirmative injury determination,[1] Commerce published an antidumping duty order on imports of common alloy aluminum sheet ("CAAS") from Turkey.  See <u>Common Alloy Aluminum Sheet From Bahrain, Brazil, Croatia, Egypt, Germany, India, Indonesia, Italy, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan and the Republic of Turkey: Antidumping Duty Orders</u>, 86 Fed. Reg. 22,139 (Dep't Commerce Apr. 27, 2021) (hereinafter, the "<u>Order</u>").

## STANDING OF PLAINTIFFS

3. The individual members of the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group are manufacturers, producers, and/or wholesalers in the United States of the domestic product that is like common alloy aluminum sheet. Additionally, the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group is a trade or business association, a majority of whose members manufacture, produce, or wholesale the domestic like product in the United States. Plaintiffs were Petitioners in the underlying agency investigation and actively participated in the investigation as parties to

---

[1] <u>Common Alloy Aluminum Sheet From Bahrain, Brazil, Croatia, Egypt, Germany, India, Indonesia, Italy, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and Turkey</u>, 86 Fed. Reg. 22,068 (USITC Apr. 26, 2021) (hereinafter, "<u>USITC Final Determination</u>").

the proceeding.[2]  As such, Petitioners are interested parties within the meaning of section 771(9)(C) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(9)(C), and Plaintiffs have standing to bring this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. The Order issued as result of Commerce's Final Determination and the USITC Final Determination was published in the Federal Register on April 27, 2021 (86 Fed. Reg. 22,139).  Pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and U.S.C.I.T. Rule 3(a), a Summons was filed within 30 days of the date on which the Order was published in the Federal Register (see ECF No. 1, dated May 27, 2021) and this Complaint is being timely filed within 30 days of the filing of the Summons.

## STATEMENT OF CLAIMS AND BASIS FOR RELIEF

## COUNT I

5. Paragraphs 1 through 4 above are realleged and incorporated herein by reference.

6. Pursuant to 19 U.S.C. § 1677a(c)(1)(B), the Department increases export price or constructed export price by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the

---

[2] During the Commerce Department's conduct of the underlying investigation (i.e., in April 2020), one of the petitioning companies – Aleris Rolled Products Inc. – was sold to Novelis Corporation, another petitioner.  As a condition of the sale, the U.S. Department of Justice required that a portion of the assets of Aleris Rolled Products Inc. be sold off.  Commonwealth Rolled Products Inc. is the name of the corporate entity that now owns the sold off assets – and Commonwealth now operates a mill in Lewisport, Kentucky that was previously owned and operated by Aleris.  Novelis Corporation owns the remainder of the assets in a corporation named Aleris Rolled Products, Inc.

exportation of the subject merchandise to the United States." The Commerce Department commonly refers to this adjustment as the "duty drawback adjustment." See Issues and Decision Memo at 8.

7. To determine whether a particular respondent is eligible to receive a duty drawback adjustment, the Department applies a two-pronged test that seeks to determine whether: (1) the rebate or exemption of an otherwise payable import duty is linked to the exportation of the subject merchandise; and (2) there are sufficient imports of the raw material to account for the duty drawback paid by the subject country government upon the export of subject merchandise. See id. at 8.

8. Additionally, a respondent is not eligible for a duty drawback adjustment as a threshold matter, where the record establishes that the relevant imports are not suitable for use in producing the subject merchandise. See Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S., 861 F.3d 1269 (Fed. Circ. 2017) (hereinafter, "Maverick Tube II"). This is true irrespective of whether the foreign country permits drawback on the imported and exported materials that are identified by a respondent claiming a drawback adjustment. See id.

9. Commerce chose as one of two mandatory respondents for the underlying antidumping investigation Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan Aluminyum"), as well as its affiliates Kibar Americas, Inc. ("Kibar Americas"), and Kibar Dis Ticaret A.S. ("Kibar Dis") (collectively, "Assan").

10. In its final determination, Commerce improperly granted Assan a duty drawback adjustment to its U.S. price. See Issues and Decision Memorandum at Comment 1. In

particular, Commerce's determination that the conditions established in Maverick Tube II, (i.e., that the imported inputs upon which the home market country granted the respondent duty drawback could not be used to produce CAAS), were not present with respect to Assan is not supported by substantial record evidence. See Issues and Decision Memo at 11.

11. The scope of the Order covers imports of CAAS, which is produced from only three alloy families as designated by the Aluminum Association – specifically, 1XXX-, 3XXX-, and 5XXX-series alloys. See Order, 86 Fed. Reg. 22,139, 22,143. Additionally, Assan reported that it produced both in-scope CAAS, as well as other out-of-scope flat-rolled aluminum products – including aluminum foil and aluminum plate. Therefore, to the extent that Assan imported input materials involving aluminum products manufactured from an alloy other than 1XXX-, 3XXX-, and 5XXX-series alloys (i.e., input materials manufactured from a 2XXX-, 4XXX-, 6XXX-, 7XXX-, or 8XXX-series alloy), to produce out-of-scope flat-rolled aluminum products, the imported inputs are not capable of being used to produce CAAS. Further to the extent those imported materials resulted in Assan receiving an exemption from the payment of import duties (i.e., a duty drawback payment), the duty drawback adjustment made by Commerce is overbroad and inconsistent with the methodology sustained in Maverick Tube II.

12. Assan's description of its production process demonstrates that the input materials imported by Assan – and on which Assan received an exemption from paying import duties – were not used in the production of subject merchandise.

13. Additionally, in its questionnaire in lieu of verification, Commerce instructed Assan to submit sample documentation concerning the alloy specification for the input materials that Assan imported into Turkey. Assan's submission of sample documentation demonstrated

that the imported inputs could not have been used in the production of CAAS – specifically, because the imported input materials [

]

    14.    While Assan argued that it did import other materials that could be used for the production of CAAS, the information it cited in support of this claim – a summary of its *exports* – did not show that the *imported* materials that entered Turkey could be used to produce CAAS.

    15.    In light of this evidence, Commerce's determination that the conditions identified in Maverick Tube II were not present is not supported by substantial evidence. Moreover, because Commerce's decision to grant Assan a duty drawback adjustment was based on its unsupported determination that the conditions in Maverick Tube II were not met, the agency's determination to grant Assan a drawback adjustment is not supported by substantial evidence and is not otherwise in accordance with law.

## COUNT II

    16.    Paragraphs 1 through 15 are realleged and incorporated herein by reference.

    17.    Commerce erred by relying on Assan's reported foreign inland freight costs in calculating constructed export price. Pursuant to 19 U.S.C. § 1677a(c)(2)(A), Commerce reduces constructed export price by the amount included in constructed export price "attributable to any additional costs, charges, or expenses, and United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States." 19 U.S.C. § 1677a(c)(2)(A).

18. Where the "costs, charges, and expenses" are between affiliates, however, Commerce requires the respondent to demonstrate the "costs, charges, and expenses" are made at arm's length, in order to prevent any distortions in the dumping calculation caused by reducing the constructed export price by too much or too little. See, e.g., Hyundai Steel Co. v. United States, 319 F. Supp. 3d 1327, 1334 (Ct. Int'l Trade 2018).

19. Additionally, where a party "withholds information," "fails to provide such information by the deadlines for submission of the information or in the form and manner requested," significantly impedes a proceeding," or "provides such information but the information cannot be verified," the statute authorizes Commerce to use facts otherwise available in reaching the applicable determination. 19 U.S.C. § 1677e(a)(2). Further, if Commerce determines that an interested party "has failed to cooperate by not acting to the best of its ability to comply with a request for information," the agency "may use an inference that is adverse to the interest of the that party in selecting from among the facts otherwise available" in reaching the applicable determination. 19 U.S.C. § 1677e(b).

20. In the underlying investigation, Assan reported that its foreign inland freight from the plant/warehouse to the port is arranged and invoiced by an affiliated logistics company. Based on these circumstances, Commerce instructed Assan to provide a worksheet calculating the average price that the affiliated provider charged to unaffiliated customers for the same logistical services related to transporting subject merchandise to the port for export from Turkey. In addition, Commerce further instructed Assan to provide a comparison of this average price with the average price reported for foreign inland freight services provided to Assan by its affiliate.

21.     Assan refused to provide the information requested by Commerce and instead submitted to Commerce a comparison of a [

] and the average price between Assan and its affiliate.  Moreover, the record demonstrated that Assan's affiliated service provider [               ] during the period of investigation, indicating that it was [

] As such, the available record evidence indicated that the price paid to Assan's affiliated service provider was not made at arm's length.

22.     In its final determination, Commerce stated that "Assan has fully cooperated and provided all the information and documentation requested by Commerce in order to determine whether the price paid by Assan to the affiliated freight service provider was at arms-length." This finding by Commerce is not supported by substantial record evidence, however, as Assan failed to "provide all information and documentation requested by Commerce." Because Commerce relied on this finding to determine that Assan "fully cooperated," Commerce's determination that Assan "fully cooperated" is also not supported by substantial evidence. Additionally, Commerce's reliance on the Assan's affiliated freight charges is not supported by substantial evidence and is not otherwise in accordance with law.

## COUNT III

23.     Paragraphs 1 through 22 are realleged and incorporated herein by reference.

24.     Commerce erred by relying on Assan's reported billing adjustments where it correctly determined there was no record information to support Assan's reported adjustments. Pursuant to 19 C.F.R. §§ 351.401(c) and 351.102(b)(38), Commerce normally calculates export

price and constructed export price using a price that is net of changes in the price charged for the subject merchandise, such as discounts, rebates, or other adjustments.

25. In making such adjustments, the burden is on the "interested party that is in possession of the relevant information" to establish "the amount and nature of a particular adjustment." 19 C.F.R. § 351.401(b)(1).

26. Moreover, where a party "withholds information," "fails to provide such information by the deadlines for submission of the information or in the form and manner requested," significantly impedes a proceeding," or "provides such information but the information cannot be verified," the statute authorizes Commerce to use facts otherwise available in reaching the applicable determination. 19 U.S.C. § 1677e(a)(2). Further, if Commerce determines that an interested party "has failed to cooperate by not acting to the best of its ability to comply with a request for information," the agency "may use an inference that is adverse to the interest of the that party in selecting from among the facts otherwise available" in reaching the applicable determination. 19 U.S.C. § 1677e(b).

27. In its preliminary determination, Commerce declined to rely on Assan's reported billing adjustments. Commerce's preliminary determination was based on its finding that Assan failed to provide "sample supporting documentation" to support its claimed billing adjustment. As a result, Commerce set Assan's reported upward adjustments to zero, and also set the downward adjustments to the lowest reported value for such adjustments.

28. In its case brief, Assan argued that: (1) the record contained sufficient information for Commerce to rely on its reported billing adjustments; and (2) it cooperated to the best of its

ability and, therefore, there was no basis for Commerce to rely on an adverse inference in setting its downward adjustments to the lowest reported value for such adjustments.

29. In their rebuttal brief, Petitioners countered that Assan impeded the Department's investigation by failing to report each type of billing adjustment in a separate field, as instructed by Commerce, and failed to cooperate to the best of its ability by withholding information explicitly requested by Commerce to substantiate the company's claimed adjustments.

30. In its final determination, Commerce continued to find that the record did not support Assan's claimed billing adjustments. Commerce, however, explained that it "disagree{d} that use of an adverse inference" was warranted, and, as a result, relied on Assan's reported downward billing adjustments because it "does not benefit Assan" and "results in a lower U.S. price." Issues and Decision Memorandum at 24.

31. Assan did not respond to Commerce's clear and explicit requests for information during the underlying investigation. As a result, Commerce's determination that Assan did not fail to cooperate by not acting to the best of its ability is not supported by substantial evidence. Commerce's reliance on the fact that the downward adjustment did not "benefit Assan" also is not supported by record evidence. By refusing to supply information concerning the nature of the downward billing adjustment, Assan prevented the Department from determining whether the adjustment should have reduced Assan's U.S. price by an amount greater than that applied by Commerce. As a result, Commerce's determination is not supported by substantial evidence and is otherwise not in accordance with law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)  Hold Commerce's <u>Final Determination</u> is not supported by substantial evidence and is not otherwise not in accordance with law with respect to the claims advanced by Plaintiffs in this Complaint;

(b)  Remand the <u>Final Determination</u> to Commerce with instructions to correct the errors set forth in this Complaint; and

(c)  Provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ John M. Herrmann*
_____
JOHN M. HERRMANN
PAUL C. ROSENTHAL
R. ALAN LUBERDA
JOSHUA R. MOREY
JULIA A. KUELZOW
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Plaintiffs

Dated:  June 22, 2021