Slip Op. 26 - 65

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **ASSAN ALUMINYUM SANAYI VE TICARET A.S.,** | |
| **Plaintiff and Consolidated Defendant-Intervenor,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant,** | **Before: Gary S. Katzmann, Judge** **Consol. Court No. 21-00246** |
| **and** | |
| **ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, ALERIS ROLLED PRODUCTS, INC.; ARCONIC CORPORATION; COMMONWEALTH ROLLED PRODUCTS INC.; CONSTELLIUM ROLLED PRODUCTS RAVENSWOOD, LLC; JW ALUMINUM COMPANY; NOVELIS CORPORATION; AND TEXARKANA ALUMINUM, INC.,** | ***PUBLIC VERSION*** |
| **Defendant-Intervenors and Consolidated Plaintiffs.** | |

## <u>OPINION</u>

[Commerce's <u>Third Remand Results</u> are sustained.]

Dated: <u>June 17, 2026</u>

<u>Leah N. Scarpelli</u>, <u>Matthew M. Nolan</u>, and <u>Christian L. Bush</u>, Arent Fox LLP, of Washington, D.C., for Plaintiff and Consolidated Defendant-Intervenor Assan Aluminyum Sanayi ve Ticaret A.S.

<u>Rebecca T. Mitchell</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant the United States.  Also on the brief

were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Brien Stonebreaker, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

John M. Herrmann and Joshua R. Morey, Kelley Drye & Warren LLP, of Washington, D.C., for Defendant-Intervenors and Consolidated Plaintiffs Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its Individual Members, Aleris Rolled Products, Inc., Arconic Corporation, Commonwealth Rolled Products Inc., Constellium Rolled Products Ravenswood, LLC, JW Aluminum Company, Novelis Corporation, and Texarkana Aluminum, Inc.

Katzmann, Judge:  Before the court is a challenge to the third remand redetermination in a dispute over the antidumping duty rate for common alloy aluminum sheet from Turkey. See Final Results of Third Redetermination Pursuant to Court Remand (Dep't Com. Sep. 9, 2025), Sep. 9, 2025, ECF No. 158 ("Third Remand Results"). This consolidated dispute has spanned three successive remands. See generally Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 47 CIT __, 624 F. Supp. 3d 1343 (2023) ("Assan I"); Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 48 CIT __, 701 F. Supp. 3d 1321 (2024) ("Assan II"); Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 49 CIT __, 789 F. Supp. 3d 1257 (2025) ("Assan III").[1] As in the prior proceeding in this case, only one substantive issue remains: the application of a duty drawback adjustment by the U.S. Department of Commerce ("Commerce"). See Assan III, 789 F. Supp. 3d at 1260–61.

Plaintiff Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan") now challenges three aspects of the Third Remand Results: (1) Commerce's rejection of supplemental information submitted by Assan; (2) Commerce's determination that there is insufficient information on the record to apply

---

[1] To ensure internal consistency and compatibility with future publication formats, the court represents Turkish-language proper names without diacritics. For example, the name "Assan Alüminyum Sanayi ve Ticaret A.Ş." becomes "Assan Aluminyum Sanayi ve Ticaret A.S." See Assan II, 789 F. Supp. 3d at 1323 n.1.

a duty drawback adjustment; and (3) Commerce's cancellation of verification. See Pl. Assan's Cmts. in Opp'n to the Third Remand Redetermination at 9–10, Oct. 9, 2025, ECF No. 162 ("Assan's Br."). Defendant-Intervenors—a consortium of U.S. aluminum producers called the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group ("the Aluminum Association" or "the Association")[2]—and Defendant the United States ("the Government") ask the court to sustain the Third Remand Results. See Consol. Pls.' Cmts. on Third Remand Redetermination at 1, Oct. 9, 2025, ECF No. 161 ("Association's Br."); Def.'s Resp. to Cmts. on Commerce's Third Remand Redetermination at 2, Feb. 13, 2026, ECF No. 177 ("Gov't Br.").

The court holds to be supported by substantial evidence and in accordance with law Commerce's determinations (1) that information submitted by Assan should be removed from the record because it was not timely and (2) that there is insufficient information on the record to calculate a duty drawback adjustment. The court also holds that Commerce's cancellation of verification was not an abuse of discretion. The court accordingly sustains the Third Remand Results.

## BACKGROUND

The court presumes familiarity with the issues underlying this case as set forth in the prior remand orders. See Assan I, 624 F. Supp. 3d at 1350; Assan II, 701 F. Supp. 3d at 1323; Assan III, 789 F. Supp. 3d at 1260. The legal, factual, and procedural history is recounted here to the extent it is relevant.

---

[2]  The individual members of the Association are: Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc. See Mot. to Intervene as Def.-Inters. at 1, June 7, 2021, ECF No. 10. The Association and its members are also Consolidated Plaintiffs to the instant action.

> I.      **Legal Background**

> A.      **Duty Drawback Adjustment**

Where "a foreign country would normally impose an import duty on an input used to manufacture the subject merchandise, but offers a rebate or exemption from the duty if the input is exported to the United States," Commerce applies a "duty drawback adjustment" to the export or constructed export price. Saha Thai Steel Pipe (Pub.) Co. v. United States, 635 F.3d 1335, 1338 (Fed. Cir. 2011); see also 19 U.S.C. § 1677a(c)(1)(B).[3] "Congress intended Commerce to grant duty drawback adjustments only when there is some kind of connection between the nonpayment of import duties and the exportation of the subject merchandise to the United States." Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S., 861 F.3d 1269, 1273 (Fed. Cir. 2017). To assess duty drawback eligibility under 19 U.S.C. § 1677a(c)(1)(B), Commerce has developed a two-prong test—upheld by the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") as lawful in Saha Thai, 635 F.3d at 1340–41—which requires the respondent to demonstrate:

> (1) that the [relevant] rebate and import duties are dependent upon one another, or in the context of an exemption from import duties, that the exemption is linked to the exportation of the subject merchandise, and (2) that there are sufficient imports of the raw material to account for the duty drawback on the exports of the subject merchandise.

Saha Thai, 635 F.3d at 1340 (citation omitted).

Turkey maintains an Inward Processing Regime ("IPR"), under which exporters of merchandise from Turkey may have their duty liability on imports forgiven if the exporter satisfies certain requirements. See Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States, 47 CIT __, __, 654 F. Supp. 3d 1311, 1318 (2023). ("[Turkey's] duty drawback program, the [IPR]

---

[3] The relevant statute states that "[t]he price used to establish export price and constructed export price shall be . . . increased by . . . the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." 19 U.S.C. § 1677a(c)(1)(B).

involves exemptions from duties, rather than rebates."); Section C Questionnaire Resp. of Assan

Aluminyum Sanayi ve Ticaret A.S. at Ex. C-8 (June 29, 2020) P.R. 142–143, C.R. 52 ("Sec. C Q

Resp."). Interested firms in Turkey secure Inward Processing Certificates ("IPC"), which "set[]

forth the quantity of raw material allowed to be imported duty-free and the quantity of export

required to close the IPC." Icdas, 654 F. Supp. 3d at 1318; Sec. C Q Resp. at Ex. C-8, 7–8. Duty

liability is extinguished when an IPC is "closed," meaning that an exporter has demonstrated

sufficient amounts of corresponding imports and exports to Turkish authorities. See Sec. C Q

Resp. at Ex. C-8, 42–43.

### B.     Submission and Verification of Factual Information

Commerce "obtains most of its factual information in antidumping and countervailing duty

proceedings from submissions made by interested parties during the course of the proceeding." 19

C.F.R. § 351.301(a); see also QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir.

2011). Commerce solicits information through questionnaires. 19 C.F.R. § 351.301(c)(1). After

a party submits a response, "an interested party other than the original submitter is permitted one

opportunity to submit factual information to rebut, clarify, or correct factual information contained

in the questionnaire response." Id. § 351.301(c)(1)(v). Then, "[w]ithin seven days of the filing of

such rebuttal, clarification, or correction to a questionnaire response, the original submitter of the

questionnaire response is permitted one opportunity to submit factual information to rebut, clarify,

or correct factual information submitted in the interested party's rebuttal, clarification or

correction." Id. Commerce "will reject any untimely filed rebuttal, clarification, or correction

submission." Id. § 351.301(c)(1); see also id. § 351.302(d).

Overlying this information-gathering procedure is the verification process mandated by 19

U.S.C. § 1677m(i), which provides that Commerce "shall verify all information relied upon in

making . . . a final determination in an investigation." Id. "Verification is intended to test the

accuracy of data already submitted, rather than to provide a respondent with an opportunity to submit a new response." Tianjin Mach. Imp. & Exp. Corp. v. United States, 28 CIT 1635, 1644, 353 F. Supp. 2d 1294, 1304 (2004), aff'd, 146 Fed. Appx. 493 (Fed. Cir. 2005); see also Goodluck India Ltd. v. United States, 11 F.4th 1335, 1343–44 (Fed. Cir. 2021); Micron Tech., Inc. v. United States, 117 F.3d 1386, 1396 (Fed. Cir. 1997). "[T]here is no per se rule requiring Commerce to go through with scheduled verifications once it has announced an intention to conduct verifications in a particular case." Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995).

## II.    *History of Relevant Administrative Proceedings*

### A.    *Antidumping Determination*

In 2021, Commerce initiated a less-than-fair-value investigation of common alloy aluminum sheet ("aluminum sheet") from Turkey for the period between January 1, 2019 and December 31, 2019 and selected Assan as a mandatory respondent.[4]  See Common Alloy Aluminum Sheet from Bahrain, Brazil, Croatia, Egypt, Germany, India, Indonesia, Italy, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and the Republic of Turkey: Initiation of Less-Than-Fair-Value Investigations, 85 Fed. Reg. 19444, 19444–45 (Dep't Com. Apr. 27, 2021) P.R. 34 ("Initiation Notice"); see also Mem. from S. Presing to J. Maeder, re: Selection of Respondents for Individual Examination at 7 (Apr. 20, 2020), P.R. 49, C.R. 15 ("Selection Mem.").[5]  Assan indicated that it imported raw aluminum materials into Turkey under four IPCs,

---

[4]  In antidumping duty administrative reviews, Commerce is charged with "determin[ing] the individual . . . dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. § 1677f-1(c)(1).  However, where determining individual margins is "not practicable" due to the "large number of exporters" involved in the review, Commerce may limit its examination to a "reasonable number" of exporters, referred to as mandatory respondents.  Id. § 1677f-1(c)(2); see also 19 C.F.R. § 351.109.

[5]  "P.R." and "C.R." refer to the index numbers of what are respectively public and confidential documents in the joint appendices for the underlying administrative proceeding.  See Conf. J.A., Apr. 7, 2022, ECF No. 47; Pub. J.A., Apr. 7, 2022, ECF No. 48.

and that one of those IPCs, IPC 7905, was closed.[6]  See Sec. C Q Resp. at 43.

Commerce determined that Assan was selling aluminum sheet at less than fair value in the U.S. market and imposed antidumping duties at a rate of 2.02 percent.  See Common Alloy Aluminum Sheet from Turkey: Final Affirmative Determination of Sales at Less Than Fair Value, 86 Fed. Reg. 13326, 13326–27 (Dep't Com. Mar. 8, 2021), P.R. 358 ("Final Determination"); Common Alloy Aluminum Sheet from Bahrain, Brazil, Croatia, Egypt, Germany, India, Indonesia, Italy, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and the Republic of Turkey: Antidumping Duty Orders, 86 Fed. Reg. 22139, 22141 (Dep't Com. Apr. 27, 2021).  As part of its determination, Commerce granted Assan a duty drawback adjustment for "the closed IPC," IPC 7905.  Mem. from J. Maeder to C. Marsh, re: Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Common Alloy Aluminum Sheet from Turkey, and Final Negative Determination of Critical Circumstances 8–11 (Dep't Com. Mar. 1, 2021), P.R. 330 ("IDM").

### B.    First Remand Proceeding

Assan and the Aluminum Association each challenged the Final Determination, and the court consolidated the actions.  See Order Granting Mot. to Consolidate Cases, July 27, 2021, ECF

---

"P.R.R.2d" and "C.R.R.2d" refer to the index numbers of what are respectively public and confidential documents in the joint appendices for the Second Remand Results. See Conf. J.A., Oct. 21, 2024, ECF No. 133; Pub. J.A., Oct. 21, 2024, ECF No. 134.

"P.R.R.3d" and "C.R.R.3d" refer to the index numbers of what are respectively public and confidential documents in the joint appendices for the Third Remand Results. See Conf. J.A., Feb. 27, 2026, ECF No. 180; Pub. J.A., Feb. 27, 2026, ECF No. 181.

[6]  While the court previously redacted the relevant IPC numbers, see Assan III, 789 F. Supp. 3d at 1262–63, Assan no longer considers the IPC numbers to be business proprietary information.  See Assan's Br. at 2 n.1.

No. 18.[7]  The court "sustain[ed] Commerce's general grant of a duty drawback adjustment to Assan" and granted a request by Commerce for voluntary remand to recalculate Assan's duty drawback adjustment in accordance with Federal Circuit precedent.  Assan I, 624 F. Supp. 3d at 1362; see also id. at 1362–63 (citing Uttam Galva Steels Ltd. v. United States, 42 CIT __, 311 F. Supp. 3d 1345, 1355 (2018), aff'd 997 F.3d 1192 (Fed Cir. 2021)).

In its first remand redetermination, Commerce recalculated Assan's dumping margin to be below the de minimis level of two percent.  See Final Results of Redetermination Pursuant to Court Remand at 16 (Dep't Com. May 31, 2023), May 31, 2023, ECF No. 94 ("First Remand Results"); Assan II, 701 F. Supp. 3d at 1326.

### C.    Second Remand Proceeding

The Aluminum Association challenged Commerce's method for calculating the duty drawback adjustment in the First Remand Results, and the court held that Commerce acted contrary to 19 U.S.C. § 1677a(c)(1)(B) when it "calculated a per-unit duty drawback adjustment on the basis of a single closed IPC and applied that adjustment to all of Assan's U.S. sales of subject merchandise, including to sales of merchandise exported under open IPCs."  Assan II, 701 F. Supp. 3d at 1328 (emphasis in original).

In the second remand proceeding, Commerce asked Assan to provide "additional information . . . in order to properly allocate the benefit associated with the Turkish duty drawback program to only the reported U.S. sales that are associated with only closed-IPCs."  Letter from M. Hoadley to L. Scarpelli, re: Req. for Additional Information to Calculate Duty Drawback at 1

---

[7] Assan intervened as Defendant-Intervenor in the case filed by the Aluminum Association.  See Consent Mot. to Intervene, Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group v. United States, No. 21-00252 (July 22, 2021), ECF No. 13; Order, Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group v. United States, No. 21-00252 (July 29, 2021), ECF No. 19 (granting motion).

(May 23, 2024), P.R.R.2d 1, C.R.R.2d 1 ("May 23 Letter").  Assan asserted that all four IPCs, not just IPC 7905, had closed in time for their corresponding sales to receive drawback adjustments.  See Letter from L. Scarpelli to G. Raimondo, re: Assan Group's Resp. to Req. for Additional Information to Calculate Duty Drawback at 1 (June 6, 2024), P.R.R.2d 4, C.R.R.2d 2–7 ("June 6 Resp.").  Assan stated that "all of Assan's U.S. sales were made pursuant to a closed IPC" and provided as evidence a screenshot from the Turkish drawback system's online portal showing that all of Assan's IPCs "have the same status – 'KAPALI,' i.e. closed."  Id.; see also id. at Ex. 2A.

In response, the Aluminum Association argued that Commerce should not grant duty drawback adjustments based on the additional IPCs.  Letter from J. Morey to G. Raimondo, re: Petitioners' Cmts. & Rebuttal Factual Information Concerning Assan Aluminyum Sanayi ve Ticaret A.S.'s June 6, 2024 Resp. at 2 (June 13, 2024), P.R.R.2d 5, C.R.R.2d 8 ("June 13 Rebuttal").  As relevant to the instant case, the Association argued (1) that "the documents Assan submitted concerning IPC 7734 should be rejected from the record as unsolicited new factual information" because Commerce's May 23 Questionnaire did not request information about IPCs other than IPC 7905 and (2) that "Assan failed to provide closure documentation for IPC 7734."  Id. at 5, 6.

On June 20, 2024 Assan filed an additional submission, which contained "the closure certification from the Government of Turkey" for IPC 7734 and "the import and export list under IPC 7734."  Letter from L. Scarpelli to G. Raimondo, re: Assan Group's Submission of Cmts. & Rebuttal Factual Information in Resp. to Petitioners' June 13, 2024 Submission at 2 (June 20, 2024), P.R.R.2d 6, C.R.R.2d 9–11 ("June 20 Submission").  The Aluminum Association asked Commerce to reject the June 20 Submission, arguing that it was an untimely submission of new factual information, barred by Commerce's regulations.  See Letter from J. Morey to G. Raimondo, re: Petitioners' Request for the Department to Reject from the Record the Untimely New Factual

Consol. Court No. 21-00246                                                Page 10
*PUBLIC VERSION*

Information Filed By Assan Aluminyum Sanayi ve Ticaret A.S. on June 20, 2024 at 3 (June 25, 2024), P.R.R.2d 7, C.R.R.2d 12 (citing 19 C.F.R. § 351.301(c)(1)(v)).

In its second remand redetermination, Commerce did not reject the June 6 Response or the June 20 Submission. See Final Results of Second Redetermination Pursuant to Court Remand at 12 (Dep't Com. July 31, 2024), July 31, 2024, ECF No. 122 ("Second Remand Results"). Regarding the June 6 Response, Commerce reasoned that "[t]he information submitted by Assan regarding the status of any open IPCs was not only responsive and relevant to Commerce's remand questionnaire, but also the [c]ourt's instructions" on remand. Id. at 13. Commerce did not provide an explanation for accepting the June 20 Submission, nor did it address the Aluminum Association's comment regarding timeliness. See Assan III, 789 F. Supp. 3d at 1269; see generally Second Remand Results. Commerce granted Assan a duty drawback adjustment for sales made pursuant to both IPC 7905 and IPC 7734, which resulted in a de minimis dumping margin for Assan. See id. at 16–17.

### D.    Third Remand Proceeding

The Aluminum Association challenged the Second Remand Results, and the court sustained Commerce's acceptance of Assan's June 6 Response. See Assan III, 789 F. Supp. 3d at 1269. The court remanded for Commerce to "consider the Association's unaddressed arguments" regarding the timeliness of Assan's June 20 Submission and reliance on unverified information and "upon that consideration, to redetermine Assan's eligibility for a duty drawback based on IPC [7734]." Id. at 1274.

During the third remand proceeding, Commerce scheduled and subsequently canceled verification. See Verification Agenda Pursuant to Court-Ordered Remand at 4 (July 24, 2025), P.R.R.3d 1, C.R.R.3d 1 ("Verification Agenda"); Cancellation of Verification (Dep't Com. Aug. 4, 2025), P.R.R.3d 2 ("Verification Cancellation"). Assan objected to the cancellation of verification.

***PUBLIC VERSION***

See Assan Group's Objection to the Department's Cancellation of Verification for Assan Aluminyum Sanayi ve Ticaret A.S., Request for Immediate Reconsideration, and Request that Correspondence be Added to the Record (Aug. 4, 2025), P.R.R.3d 3 ("Assan's Cmts. on Verification Cancellation").

In its third remand redetermination, Commerce determined: (1) that the factual information included in Assan's June 20 Submission was not timely and should be removed from the record; (2) that IPC 7734 was closed; (3) that there was insufficient information on the record to determine that Assan is eligible for a duty drawback adjustment for IPC 7734; and (4) that further verification was not warranted. Third Remand Results at 2, 6–7, 25. Commerce imposed antidumping duties at a rate of 2.14 percent. Id. at 2.

### III.    *Procedural Background*

Commerce filed the Third Remand Results with the court on September 9, 2025. See Third Remand Results. Assan and the Association filed their respective comments on the Third Remand Results one month later. See Assan's Br.; Association's Br. All parties filed responses on February 13, 2026. See Gov't Br.; Assan's Reply to Cmts. on Third Remand Results, Feb. 13, 2026, ECF No. 175 ("Assan's Reply Br."); Aluminum Ass'n's Reply to Cmts. on Third Remand Results, Feb. 13, 2026, ECF No. 176 ("Association's Reply Br."). On March 26, 2026, the parties filed supplemental responses to written questions from the court. See Assan's Resp. to Suppl. Qs, Mar. 26, 2026, ECF No. 183 ("Assan's Suppl. Q Resp."); Aluminum Ass'n's Resp. to Suppl. Qs, Mar. 26, 2026, ECF No. 184 ("Association's Suppl. Q Resp."); Gov't Resp. to Suppl. Qs, Mar. 26, 2026, ECF No. 185 ("Gov't Suppl. Q Resp."). All relevant filings are now before the court.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2). The standard of review is set forth in 19 U.S.C. § 1516a(b)(l)(B)(i): "The court

shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law," id., , "which includes compliance with the court's remand order," SMA Surfaces, Inc. v. United States, 47 CIT __, __, 658 F. Supp. 3d 1325, 1328 (2023). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Broadcom Corp. v. Int'l Trade Comm'n, 28 F.4th 240, 249 (Fed. Cir. 2022) (internal quotation marks and citation omitted). Commerce's verification procedures are reviewed for abuse of discretion. See Micron Tech., 117 F.3d at 1396.

## DISCUSSION

Assan challenges three aspects of the Third Remand Results: (1) Commerce's rejection of Assan's June 20 Submission; (2) Commerce's determination that there was insufficient information on the record to establish that IPC 7734 was eligible for a duty drawback adjustment; and (3) Commerce's cancellation of verification. See Assan's Br. at 9–10.

The court considers each of Assan's arguments in sequence. First, the court holds that Commerce lawfully rejected Assan's June 20 Submission as an untimely new factual information pursuant to 19 C.F.R. § 351.301(c)(1)(v). Second, with Assan's June 20 Submission removed from the record, the court holds that Commerce's determination that there was insufficient evidence to establish that IPC 7734 was eligible for a duty drawback adjustment is supported by substantial evidence and in accordance with law.[8] Third, the court holds that Commerce did not

---

[8] The Aluminum Association contends that Commerce's conclusion that IPC 7734 was closed is not supported by substantial evidence, but the Association does not seek remand on this ground because it states that the alleged error is harmless. See Association's Br. at 2. Because the court sustains Commerce's determination that IPC 7734 is not eligible for a duty drawback adjustment, the court agrees that the alleged error would be harmless because it "clearly had no bearing on . . . the substance of decision reached' . . . .". Oracle Am., Inc. v. United States, 975 F.3d 1279, 1291 (Fed. Cir. 2020) (quoting Mass. Trs. of E. Gas & Fuel Assocs. v. United States, 377 U.S. 235, 248 (1964)). The court therefore does not consider whether Commerce's determination that IPC 7734 was closed is supported by substantial evidence.

abuse its discretion in cancelling verification because verification would have been unnecessary and would not have provided Assan with an opportunity to submit new factual information. The court accordingly sustains the Third Remand Results.

> **I.      *Commerce's Rejection of Assan's June 20 Submission Is in Accordance with Law***

After the Aluminum Association submitted its June 13 Rebuttal to Assan's June 6 Response, Assan had "one opportunity to submit factual information to rebut, clarify, or correct factual information submitted in the [Association's] rebuttal, clarification or correction." 19 C.F.R. § 351.301(c)(1)(v). Assan's June 20 Submission responded to the Association's June 13 Rebuttal and contained new factual information related to IPC 7734. See June 20 Submission at 2, Assan's Br. at 31; Assan's Suppl. Q Resp. at 3.[9] There was, however, no "factual information submitted in" the Association's June 13 Rebuttal related to IPC 7734. 19 C.F.R. § 351.301(c)(1)(v). The Association's June 13 Rebuttal "contain[ed] new factual information at Attachments 1–3," June 13 Rebuttal at 2, but the attachments did not relate to IPC 7734. Two of the attachments were excerpts of Assan's prior submissions that the Association referenced in its discussion of two other IPCs, and the third was a translation of a Turkish phrase. See id. at 4, Attach. 1–3; see also Association's Br. at 3 n.2. The Association's discussion of IPC 7734 in the June 13 Rebuttal consisted of arguments that Commerce should reject the information submitted in Assan's June 6 Response and that "Assan failed to provide closure documentation for IPC [7734]." Id. at 5, 6.[10]

Commerce rejected Assan's June 20 Submission after determining that the submission was

---

[9]   Specifically, the June 20 Submission included a closure certificate from the Government of Turkey and an import-export list for IPC 7734. See June 20 Submission at 2, Attach. 1.

[10]   The Association's discussion of IPC 7734 references a "table in Exhibit 2A," which was submitted in Assan's June 6 Response. June 13 Rebuttal at 6; see also June 6 Resp. at Ex. 2A.

*PUBLIC VERSION*

untimely because it did not "rebut, clarify, or correct information placed on the record by another interested party." Third Remand Results at 6–7. This determination is in accordance with law because there was no "factual information submitted" in the Association's June 13 Rebuttal related to IPC 7734 that Assan could "rebut, clarify, or correct." 19 C.F.R. § 351.301(c)(1)(v).

Assan argues that the June 20 Submission was timely because the Association's June 13 Rebuttal "made factual arguments," and that the June 20 submission "responded to those factual claims." Assan's Suppl. Q Resp. at 3; see also Assan's Br. at 31 (characterizing the June 20 Submission as "rebutting [the Association's] challenge of the closure, beginning, and ending date of IPC 7734"). But "arguments" or "claims" are not "factual information"; Commerce has explained that 19 C.F.R. § 351.301 "governs the submission of factual information, not argument." Definition of Factual Information and Time Limits for Submission of Factual Information, 78 Fed. Reg. 21246, 21251 (Dep't Com. Apr. 10, 2013) ("Definition of Factual Information"); see also Stupp Corp. v. United States, 5 F.4th 1341, 1349 (Fed. Cir. 2021) (recognizing that Commerce's regulations allow parties to submit arguments based on factual information after the time to submit new factual information has passed). Commerce defines "[f]actual information" as "[e]vidence, including statements of fact, documents, and data." 19 C.F.R. § 351.102(b)(21); see also Evidence, Black's Law Dictionary (12th ed. 2024) (defining "evidence" as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact"). Nowhere does Commerce's definition of "factual information" reference "arguments" or "claims." See generally 19 C.F.R. § 351.102(b)(21). Thus, the fact that an argument refers to "statements of fact, documents, and data" does not make the argument itself "[f]actual information." 19 C.F.R. § 351.102(b)(21).

In its June 13 Rebuttal, the Association argued that a document previously submitted by

Assan was insufficient to establish that IPC 7734 was closed, but the Association itself did not submit "[e]vidence, including statements of fact, documents, and data," that tend to prove or disprove the alleged fact of closure. 19 C.F.R. § 351.102(b)(21). Assan therefore was not entitled to submit factual information related to IPC 7734 in its June 20 Submission because the plain text of 19 C.F.R. § 351.301(c)(1)(v) permits submission of new factual information only to "rebut, clarify, or correct factual information"—not "claims" or "arguments"—submitted in an interested party's rebuttal. Id.

Assan also argues that Commerce should accept the June 20 Submission "to comply with its statutory mandate to (1) calculate accurate margins and (2) make an adjustment to export price, based on the full extent of the duty drawback." Assan's Br. at 7. But, while "[a]n overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible," Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1379 (Fed. Cir. 2013), "it does not follow that Commerce must pursue that goal by systematically accepting information without regard for procedural constraints." Assan III, 789 F. Supp. 3d at 1271. Indeed, "[b]y Commerce's own description, regulations like 19 C.F.R. §§ 351.301 and 351.302 promote accuracy by incentivizing interested parties to present all relevant facts in a form that Commerce can readily consider." Id. (emphasis in original) (citing Definition of Factual Information, 78 Fed. Reg. at 21247).

Furthermore, Assan had the opportunity to submit factual information related to IPC 7734 in its June 6 Response to Commerce's supplemental questionnaire during the second remand proceeding. See May 23 Letter at 1 (requesting "additional information . . . in order to properly allocate the benefit associated with the Turkish duty drawback program to only the reported U.S. sales that are associated with only closed-IPCs"); see also Assan III, 789 F. Supp. 3d at 1269

(affirming Commerce's acceptance of information related to IPC 7734 in Assan's June 6 Response to the May 23 Letter). "[T]he burden of creating an adequate record lies with interested parties and not with Commerce," which includes compliance with procedural and timeliness requirements. QVD Food, 658 F.3d at 1324 (quoting Tianjin Mach. Imp. & Exp. Corp. v. United States, 16 CIT 931, 936, 805 F. Supp. 1008, 1015 (1992)); see also Asociacion Colombiana de Exportadores de Flores v. United States, 13 CIT 13, 24, 704 F. Supp. 1114, 1124 (1989), aff'd, 901 F.2d 1089 (Fed. Cir. 1990). Assan provides no justification for failing to include in its June 6 Response the factual information contained in its rejected June 20 Submission. See Assan III, 789 F. Supp. 3d at 1271; see generally Assan's Br.

Because the Association did not submit factual information pertaining to IPC 7734 in its June 13 Rebuttal, Commerce correctly determined that Assan's June 20 Submission of new factual information was not timely. See 19 C.F.R. § 351.301(c)(1)(v). The court therefore holds Commerce's rejection of Assan's June 20 Submission to be in accordance with law.

> **II.    *Commerce's Determination That IPC 7734 Was Not Eligible For a Duty Drawback Adjustment Is Supported By Substantial Evidence and in Accordance with Law***

To establish duty drawback eligibility, a respondent must show that raw material imported under an IPC is sufficiently related to a duty drawback on the exported subject merchandise. See Maverick Tube, 861 F.3d at 1273; Saha Thai, 635 F.3d at 1340. Without the June 20 Submission, Commerce found that "the record does not contain the actual import and exporter values, customs duty rates, and reconciled duties exempted" and determined that the missing information would be "necessary to calculate a per-unit drawback adjustment for IPC [7734]." Third Remand Results at 16. "As a result, [Commerce] found the record does not contain sufficient information to find that Assan is eligible for a duty drawback adjustment regarding IPC [7734]." Id. at 2. Assan argues that the fact that Commerce determined that IPC 7734 was closed is sufficient to establish

eligibility, and that Commerce was therefore required to calculate a duty drawback adjustment for IPC 7734. See Assan's Br. at 17. Considering the sparse record evidence pertaining to IPC 7734 and the standard to establish duty drawback eligibility, the court holds Commerce's determination that there was insufficient evidence to establish eligibility for IPC 7734 to be supported by substantial evidence and in accordance with law.

> **A.    Commerce's Determination that Record Evidence was Insufficient to Establish Duty Drawback Eligibility for IPC 7734 Is in Accordance with Law**

Following rejection of Assan's June 20 Submission, the only references to IPC 7734 in the record are contained in Assan's initial Section C Questionnaire Response and June 6 Response. In its initial questionnaire response, Assan stated that it imported raw input materials under four IPCs, including IPC 7734, and that only IPC 7905 was closed. See Sec. C Q Resp. at 43. Assan provided no supporting documentation related to IPC 7734. See Third Remand Results at 15; see generally Sec. C Q Resp. In its June 6 Response, Assan provided: (1) a copy of the authorization certificate for IPC 7734 from the Turkish Ministry of Trade listing the material and amount of items authorized to be imported and exported, see June 6 Resp. at Ex. 2B; (2) "a screenshot from the Turkish drawback system's e-portal" showing that the four IPCs referenced in its initial questionnaire response, including IPC 7734, "have the same status – 'KAPALI', i.e. closed," id. at 1; see also id. at Ex. 2A (also indicating the date of closure for each IPC); (3) a table listing the number of days each IPC remained open, see id. at Ex. 5; and (4) authorization and closure documentation for IPC 7905, see id. at Ex. 2B; Third Remand Results at 9.[11]

---

[11]  In contrast, for IPC 7905 Assan in the initial questionnaire response provided authorization and closure documentation from the Turkish Ministry of Trade, information "showing the quantities of raw materials which were purchased and quantities of finished goods which were exported as well as yield/loss ratios," and a table of "all imports and exports made under the IPC." Sec. C Q Resp. at 43–45. Assan also submitted a completed duty drawback calculation worksheet, in which Assan

Commerce explained that "Assan's June 6 submission is insufficient for the purposes of calculating a duty drawback adjustment, as it only contains projected values, not actual, reconciled import and export data." Third Remand Results at 15. A comparison to the record evidence available for IPC 7905 shows this determination to be well-founded: for IPC 7905, the documentation submitted by Assan shows that the "provisional" value of exports and imports authorized under the IPC was different from the value of exports and imports "realized" under the IPC. See June 6 Resp. at Ex. 2B.[12] For IPC 7734, the record contains only the provisional value of exports and imports authorized, not the final value of exports and imports realized. See id. Commerce explained that it was "unable to use the projected values" of imports and exports authorized under IPC 7734 as a basis for a duty drawback calculation. Third Remand Results at 17. Commerce also explained that value of "actual"—or realized—imports and exports, as well as "customs duty rates, and reconciled duties exempted" were "necessary to calculate a per-unit drawback adjustment for IPC [7734]." Id. at 16.[13]

In addition to being insufficient to calculate a duty drawback adjustment, Commerce

---

"calculate[d] the reported per unit amount of duty drawback" and explained its calculation methodology. Id. at 45.

[12]   Under IPC 7905, Assan was authorized to import [[                    ]] and export [[                    ]] of the relevant products, and Assan "realized" imports of [[                    ]] and exports of [[                    ]]. See June 6 Resp. at Ex. 2B. The closure documentation also confirmed that "all of the raw materials, auxiliary materials and packaging materials imported as customs within the scope [IPC 9705] are used within the exported products . . . ." Id.; see also Third Remand Results at 9.

[13]   To calculate the duty drawback adjustment, Commerce "divides the total closed-IPC duty drawback benefit associated with U.S. exports in the POI for the closed-IPC, by their respective quantity of subject merchandise exported to the U.S. during the POI for the closed-IPC, and then applies the relevant per-unit duty drawback adjustment for the closed IPC to the respective U.S. sales of subject merchandise during the POI that were exported under that closed IPC." Third Remand Results at 17.

explained that the projected import and export values did not support a determination that Assan was eligible for a duty drawback adjustment. See Third Remand Results at 17–18. Recall that to be eligible for a duty drawback adjustment a respondent must demonstrate (1) that "the exemption [from import duties] is linked to the exportation of the subject merchandise" and (2) "that there are sufficient imports of the raw material to account for the duty drawback on the exports of the subject merchandise." Saha Thai, 635 F.3d at 1340. Commerce explained that "IPC [7734] fails both prongs of the test." Third Remand Results at 18. First, "[w]ithout a detailed list of actual imports or exports, customs duty rate and import and export ledgers for IPC [7734] reconciled to the U.S. sales database, Commerce cannot conclude that such imports were suitable for producing subject merchandise." Id. Second, without "the quantity of actual imports under IPC [7734] or the associated exempted duties, Commerce cannot confirm whether sufficient imports existed to support the claimed drawback." Id. The explanation provided by Commerce shows that it applied the two-prong test upheld by the Federal Circuit in Saha Thai and its determination that IPC 7734 was not eligible for a duty drawback adjustment is supported by substantial evidence and in accordance with law.

### B. Evidence of Closure of an IPC Is Not Sufficient to Establish Eligibility for a Duty Drawback Adjustment

Assan argues that Commerce's determination that IPC 7734 was not eligible for a duty drawback adjustment is not supported by substantial evidence on the basis that "the agency erred in conflating 'eligibility' for a drawback adjustment with 'calculability.'" Assan's Br. at 9.[14] Assan asserts that "[t]he fact that IPC 7734 is closed behooves [Commerce] to take action to ensure

---

[14] The court notes that Commerce separately determined that there was insufficient evidence both to calculate a duty drawback adjustment for IPC 7734, see Third Remand Results at 15–17, and to establish that IPC 7734 was eligible for a duty drawback adjustment, see id. at 17–18. The court nonetheless considers Assan's argument that it was eligible for a duty drawback adjustment based on evidence that the IPC 7734 was closed.

Assan receives its entire drawback, either through using its calculation from the [Second Remand Results], reopening the record, conducting verification of the June 6 Submission, or using neutral facts available . . . ." Id.; see also id. at 17. In essence, Assan argues that evidence that IPC 7734 was closed establishes that its liability was forgiven, and that Commerce is therefore obligated to adjust its constructed export price. The court is unpersuaded by the argument that evidence of IPC closure alone is sufficient to establish eligibility for a duty drawback adjustment absent evidence of the amount of duty liability forgiven. Furthermore, 19 U.S.C. § 1677a(c)(1)(B) places the burden of establishing eligibility for a duty drawback adjustment on the respondent such that Commerce was not obligated to calculate a duty drawback adjustment if Assan did not provide evidence sufficient to establish eligibility.

This court has repeatedly affirmed that open IPCs are not eligible for duty drawback adjustments. See Assan II 701 F. Supp. 3d at 1328 (holding that there was "no clear statutory basis" for Commerce to apply duty drawback adjustments to "certain open-IPC sales"); Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States, 44 CIT __, __, 439 F. Supp. 3d 1342, 1349 (2020) (holding "Commerce was within its discretion to decline to [calculate an duty drawback adjustment for] duties conditionally exempted under open IPCs"); Icdas, 654 F.Supp.3d at 1319 (noting Commerce's practice "was to use only closed IPCs to calculate the [duty drawback] adjustment"); Noksel Celik Boru Sanayi A.S. v. United States, 47 CIT __, __, 2023 WL 5426585 *4 (2023) (explaining that "Commerce's requirement of IPC closure" to grant a duty drawback adjustment "is not new"); cf. Toscelik Profil ve Sac Endustrisi A.S. v. United States, 42 CIT __, __, 348 F. Supp. 3d 1321, 1328 (2018) (rejecting Commerce's requirement that an IPC—referred to by the Turkish acronym DIIB—be closed during the period of investigation).[15] These cases

---

[15] The Association argues that "Assan has not been prejudiced by Commerce's denial of a duty

*PUBLIC VERSION*

indicate that closure of an IPC is a necessary condition to establish eligibility for a duty drawback adjustment. Yet it does not follow that closure alone is sufficient, or that closed IPCs are automatically eligible for a duty drawback adjustment.

As discussed supra, eligibility depends on a showing that the exemption from the import duties is linked, or related, to the exportation of subject merchandise, and that the quantity of imports is sufficient to account for the exemption. See Saha Thai, 635 F.3d at 1340; Maverick Tube, 861 F.3d at 1274. The mere fact that an IPC is closed, without more, does not provide evidence a "connection between the nonpayment of import duties and the exportation of the subject merchandise to the United States." Id. at 1273. Nor does it provide evidence about the quantity of imports. See Saha Thai, 635 F.3d at 1340.

Additionally, the court is not persuaded by Assan's argument that that IPC 7734 is eligible for a duty drawback adjustment because the Turkey's duty "drawback regime itself" satisfies the Saha Thai test. Assan's Br. at 13. This court rejected a similar argument in Assan II, reasoning that 19 U.S.C. § 1677a(c)(1)(B) does not "allow deeming the background operation of an IPC scheme to confer exempt status on certain unexempted duties under open IPCs for the narrow purpose of calculating drawbacks." 701 F. Supp. 3d at 1329. The same reasoning applies to closed IPCs for which a respondent has not provided evidence of the amount of duty liability excepted.

_____

drawback adjustment based on IPC 7734" because Assan expected Commerce to reach a determination based on the record developed during the investigation" not based on later developments. Association's Reply at 2; see also Associations' Suppl. Q Resp at 2. Commerce did not cite lack of prejudice in its determination. See generally Third Remand Results. In any event, to the extent the Association argues that Assan is not prejudiced because IPC 7734 was not closed at the time of the initial investigation, and was only closed during the remand proceedings, the court is not persuaded by that argument. The fact that duty liability was excepted after the initial investigation concluded would not bar Assan from being entitled to the duty drawback adjustment in the redetermination on remand had Assan provided the requisite documentation. See Toscelik Profil, 348 F. Supp. 3d at 1328.

The statute "references only import duties, not import duty programs." Saha Thai Steel Pipe (Public) Co. v. United States, 33 CIT 1541, 1543, 2009 WL 3326637 (2009). Thus, Commerce's evaluation of the eligibility of each IPC for a duty drawback adjustment—rather than evaluating the IPR scheme as a whole—is in accordance with law.

Finally, the court finds unpersuasive Assan's argument that evidence that IPC 7734 was closed obligated Commerce to calculate a duty drawback adjustment. Assan argues that Commerce's refusal to calculate a duty drawback adjustment "through using neutral facts available" or reopening the record to "accept[] the necessary information, lacks substantial evidentiary support and is inconsistent with the agency's established practice." Assan's Br. at 17. This argument fails because the burden is on the respondent to establish eligibility for a duty drawback adjustment, and Commerce was not required to calculate a duty drawback adjustment—either through the application of neutral facts available or by reopening the record—for an IPC for which record evidence was insufficient to establish eligibility.

Commerce's regulations make clear that, "[i]n making adjustments to export price, [or] constructed export price . . . [t]he interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of [Commerce] the amount and nature of a particular adjustment." 19 C.F.R. § 351.401(b)(1); see generally Zenith Elecs. Corp. v. United States, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("The burden of production should belong to the party in possession of the necessary information."); QVD Food, 658 F.3d at 1324. Duty drawback adjustments are one such adjustment, and the Federal Circuit has affirmed that "the respondent is required to demonstrate" eligibility. See Saha Thai 635 F.3d at 1340. The burden was therefore on Assan, as the party "in possession of the necessary information," to establish "the amount and nature" of the duty drawback adjustment it claims it is entitled to for IPC 7734.

19 C.F.R. § 351.401(b)(1).

"[W]hen a respondent fails to carry its burden of showing eligibility for a constructed export price offset [under 19 C.F.R. § 351.401(b)(1)] . . . the agency's duty is simply to deny the offset." Daikin Am., Inc. v. United States, 48 CIT __, __, 2024 WL 1171736, at *3 n.3 (2024). Commerce is required to apply facts available to fill a gap in the record. 19 U.S.C. § 1677e(a). Here, there was no gap in the record related to the calculation of a duty drawback adjustment because Commerce determined that IPC 7734 was not eligible for an adjustment based on the information on the record. See Third Remand Results at 17–18; Gov't Suppl. Q Resp. at 9. Thus, Commerce was not required to use facts available to calculate a duty drawback adjustment. See Daikin, 2024 WL 1171736, at *3 n.3. Commerce also was not required to reopen the record to admit evidence that IPC 7734 was eligible for a duty drawback adjustment. See Essar Steel Ltd. v. United States, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (explaining that Commerce "did not err when it declined to reopen the record" for evidence the respondent could have but did not previously provide).

Furthermore, Commerce's determination was not contrary to agency practice, as Assan suggests. See Assan's Br. at 19–21 (citing Aluminum Extrusions From the Republic of Türkiye, 89 Fed. Reg. 80512 (Dep't Com. Oct. 3, 2024) & accompanying IDM ("Aluminum Extrusions IDM")). Assan did not raise the determinations in the aluminum extrusions investigation before Commerce. See generally Assan's Cmts. on Draft Results of Redetermination (Aug. 20, 2025), P.R.R.3d 8. It therefore failed to give Commerce a chance to address this argument in the first instance, so this argument was not exhausted. See Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1388 (Fed. Cir. 2014) ("[A] party's failure to raise an argument before Commerce constitutes a failure to exhaust its administrative remedies."). The court "refuse[s] to consider

those arguments not presented in the underlying administrative proceedings." Id. Additionally, the aluminum extrusions investigation is distinguishable because Commerce determined there that the respondent had "provided information that preliminarily satisfies both prongs of the two-prong test for duty drawback [eligibility] concerning its use of [Turkey's] IPR," such that "Commerce must apply a duty drawback adjustment." Aluminum Extrusions IDM at 11. Commerce determined that information necessary to calculate a duty drawback adjustment was missing from the record and applied facts available. See id. at 11–12. The situation here is different because Commerce determined that the record did not support a determination that Assan was eligible for a duty drawback adjustment based on IPC 7734, so no calculation of an adjustment was required. See Gov't Br. at 31–32.

### III.    *Commerce Did Not Abuse Its Discretion in Cancelling Verification*

Commerce enjoys discretion in its verification procedures, and "there is no per se rule requiring Commerce to go through with scheduled verifications once it has announced an intention to conduct verifications in a particular case." Torrington, 68 F.3d at 1352. A determination that "Commerce abused its discretion by canceling the verification[]" depends on whether "Commerce's decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " Id. at 1351.[16]

---

[16]    The parties agree that the standard of review for cancellation of verification is abuse of discretion. See Assan's Br. at 8; Gov't Suppl. Q Resp. at 2; Association's Suppl. Q Resp. at 6. Assan argues that the "Commerce's reasoning and justification [in cancelling verification] should also be reviewed for substantial evidence." Assan's Br. at 8; see also id. at 21–22. The Government and the Association disagree. See Gov't Suppl. Q Resp. at 2; Association's Suppl. Q Resp. at 6. In general, the court reviews Commerce's cancellation of verification for abuse of discretion. See Torrington, 68 F.3d at 1351; Micron Tech., 117 F.3d at 1396. However, where cancellation of verification is based on an underlying "factual finding" or determination, "[s]uch determinations are reviewed for substantial evidence." Hyundai Elec. & Energy Sys. Co. v. United States, 44 CIT __, __ n.10, 466 F. Supp. 3d 1303, 1311 n.10 (2020), aff'd, 15 F.4th 1078 (Fed. Cir. 2021); see also 19 U.S.C. § 1516a(b)(1)(B)(i). In this case, to the extent that cancellation of verification was based on a determination that the unverified information contained in Assan's June 6 Response was

*PUBLIC VERSION*

In this case, Commerce had already verified the other relevant information on the record and found no inconsistencies, so "further verification would be redundant." See Third Remand Results at 22. The only relevant information submitted after verification was Assan's June 6 Response and June 20 Submission. Commerce rejected the June 20 Submission as untimely and determined that the June 6 Response was insufficient to support finding IPC 7734 eligible for a duty drawback adjustment. Verification of the June 6 Response would not change the outcome of Commerce's redetermination, and it was not an abuse of discretion for Commerce to determine, under these circumstances, that verification was unnecessary. See id. at 21 ("[A]voiding unnecessary verification promotes the efficient use of Commerce's resources while ensuring compliance with regulatory and statutory standards.").

To the extent Assan argues that verification would have provided it with an opportunity to submit information to establish that IPC 7734 was eligible for a duty drawback adjustment, this argument is unavailing. Commerce conducts verification "to test the accuracy of data already submitted, rather than to provide a respondent with an opportunity to submit a new response." Tianjin, 28 CIT at 1644, 353 F.Supp.2d at 1304. Assan argues that "the import export documents needed to calculate the duty drawback adjustment [were] within the scope of the supporting documents Assan would be reasonably expected to provide at the verification." Assan's Br. at 29; see also Assan's Suppl. Q Resp. at 3. But, as Assan itself notes, the verification agenda asked Assan to prepare to discuss "documentation that clearly identifies the closure date[]" of IPC 7734. Id. at 26 (quoting Verification Agenda at 4). Verification of the closure date would not resolve the lack of record evidence on which Commerce based its determination, namely the absence of "a

---

insufficient to find IPC 7734 eligible for a duty drawback adjustment, the court holds that underlying determination to be supported by substantial evidence.

detailed list of actual imports or exports, customs duty rate and import and export ledgers for IPC [7734] reconciled to the U.S. sales database." Third Remand Results at 18. Nor is the missing information a "correction" that Commerce could have accepted during verification. Cf. NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995); Goodluck India Ltd. v. United States, 43 CIT __, __, 393 F. Supp. 3d 1352, 1363 (2019). Any error in declining to proceed with verification would therefore be harmless because it would not alter Commerce's determination that record evidence is insufficient to establish that IPC 7734 is eligible for a duty drawback adjustment. See Oracle, 975 F.3d at 1291.

Assan also argues that Commerce failed to adequately explain its decision to cancel verification or respond to Assan's contemporaneous objection and that Assan was harmed by the "last minute" cancellation because of the time it spent preparing for verification. See Assan's Br. at 10, 21–30. The court disagrees. First, Commerce provided an explanation of its determination that verification was unnecessary in the Third Remand Results that responded to the objections raised by Assan. See Third Remand Results at 25; see also id. at 19–26; Draft Third Results of Redetermination Pursuant to Court Remand at 13–14 (Dep't Com. Aug. 14, 2025), P.R.R.3d 5, C.R.R.3d 2. ("Draft Third Remand Results"). While the explanation Commerce provided in the notice of cancellation was brief, see Verification Cancellation at 1,[17] the court declines to hold that Commerce was required to provide a more thorough contemporaneous explanation. Second, had Commerce proceeded with verification, it would have required additional time and effort from Assan, which undermines Assan's claim that it was harmed because it "devot[ed] significant time and resource to" preparing for verification. Assan's Br. at 24. Third, the third remand proceeding

---

[17] Commerce stated that it had "determined to exercise its discretion to decline to verify the information in this third remand redetermination." Verification Cancellation at 1.

took place over just a few weeks: Commerce issued the verification agenda July 24, 2025

scheduling verification for August 5–7, Commerce notified Assan of the cancellation decision on

August 1, 2025, and Commerce published its Draft Third Remand Results on August 14, 2025.

See Verification Agenda; Verification Cancellation; Draft Third Remand Results; see also Gov't

Suppl. Q Resp. at 4; Assan's Br. at 24 n.5. The short timeline undermines Assan's claims that the

cancellation of verification was an abuse of discretion in that it occurred at the "last minute."

Assan's Br. at 10.[18]

## CONCLUSION

For the reasons stated above, the court holds that Commerce's determinations that Assan's

June 20 Submission was untimely and that the record did not contain sufficient evidence to

establish that IPC 7734 was eligible for a duty drawback adjustment are supported by substantial

evidence and in accordance with law. The court also holds that Commerce did not abuse its

discretion in cancelling verification. Commerce's Third Remand Results are sustained. Judgment

will enter accordingly.

**SO ORDERED.**

/s/     *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: June 17, 2026
    New York, New York

---

[18] Assan also argues that verification would have been consistent with the court's remand instruction in Assan III. See Assan's Br. at 22, 23. While verification may have been consistent with the court's order, Assan III did not compel verification; rather it instructed Commerce to "consider the Association's unaddressed arguments regarding . . . verification." Assan III, 789 F. Supp. 3d at 1274. Commerce did so, see Third Remand Results at 19–25, and the decision to not to conduct verification is not inconsistent with the prior remand order.